**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

MICHAEL FEELER, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

WYSSTA SERVICES, INC.,

*Defendant.*

Case No. 1:25-cv-794
Honorable Sharon Johnson Coleman

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**INTRODUCTION** ---------- **1**

**FACTUAL BACKGROUND** ---------- **1**

**LEGAL STANDARD** ---------- **3**

**ARGUMENT** ---------- **3**

A. PLAINTIFF STATES AN ECPA CLAIM ---------- 3

*1. Wyssta's Argument That Its Primary Motive Was Financial Is Without Merit ---------- 4*

*2. The Crime or Tort Is Independent of the Interception ---------- 7*

B. PLAINTIFF STATES AN ILLINOIS EAVESDROPPING CLAIM ---------- 9

*1. Google Is Not a Party to the Communications ---------- 10*

*2. Wyssta Is Google's Principal ---------- 11*

*3. Plaintiff States a 720 Ill. Stat. §§ 5/14-2(a)(4) Violation ---------- 12*

**CONCLUSION** ---------- **13**

# TABLE OF AUTHORITIES

CASES

*A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. 2024) ------------------------1, 5, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)----------------------------------------------------------------3

*Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020) -------------------------------- 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)------------------------------------------------------3

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ---------------------------------------7

*Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)-------------5

*Derfus v. City of Chicago*, 42 F. Supp. 3d 888 (7th Cir. 2014) -----------------------------------------3

*Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)------------9

*In re DoubleClick Inc. Privacy Litig.*, 154 F.Supp.2d 497 (S.D.N.Y. 2001)-------------------------6

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015)---- 10

*In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024)------ 10

*Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013) ---------------------------------------------------9

*Kane v. University of Rochester*, 2024 WL 1178340 (W.D.N.Y. 2024)-------------------------------8

*Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023)--------------------------- 12

*Kurowski v. Rush System for Health*, 2023 WL 8544084 (N.D. Ill. 2023)----------------- 1, 5, 8, 11

*M-1 Holdings, Inc. v. Members 1st Fed. Credit Union*, 2025 WL 844022 (N.D. Ill. Mar. 18, 2025) -----------------------------------------------------------------------------------------------9

*Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 WL 963779 (N.D. Ill. Mar. 31, 2025)1, 5, 6

*Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260 (D. Minn. Mar. 28, 2024)-------------------9

*Nienaber v. Overlake Hosp. Med. Ctr.* (*Nienaber I),* 733 F. Supp. 3d 1072 (W.D. Wash. 2024)--9

*Okash v. Essentia Health*, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ---------------------------- 8

*Pedro Lugo v. Inova Health Care Services*, 2025 WL 905191 (E.D. Va. Mar. 25, 2025) ---------- 8

*Platt v. Brown*, 872 F.3d 848 (7th Cir. 2017) ------------------------------------------------------- 3

*Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941 (N.D. Ill. 2024) ---------------------------- 1, 5

*Stein v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) --------------- passim

*Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552 (D. Ariz. Jan. 28, 2025) ----------------- 9

*Thomas v. Pearl,* 998 F.2d 447 (7th Cir.1993) ------------------------------------------------------ 6

*United States v. Pace*, 48 F.4th 741 (7th Cir. 2022) ------------------------------------------------ 9

*Willams v. TMC Health,* 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ---------------------------- 8, 9

*Zak v. Bose Corp.*, 2020 WL 2762552 (N.D. Ill. May 27, 2020) -------------------------------- 10, 11

STATUTES

18 Ill. Stat. § 5/14-1 ------------------------------------------------------------------------------- 12

18 U.S.C. § 2510 ----------------------------------------------------------------------------------- 13

18 U.S.C. § 2511 ------------------------------------------------------------------------------------ 3

42 U.S.C. § 1320d-6 --------------------------------------------------------------------------------- 4

720 Ill. Stat. § 5/14-2 --------------------------------------------------------------------------- passim

Plaintiff respectfully submits this memorandum of law in opposition to Wyssta Services, Inc.'s ("Wyssta" or "Defendant") motion to dismiss (ECF 12-1).

## INTRODUCTION

Delta Dental is a network of affiliated health insurance providers that offer their plan members an online patient portal to communicate with Delta Dental providers and access plan benefits. Wyssta operates the patient portal for the Delta Dental providers network. Unbeknownst to plan members, Wyssta incorporated a hidden tracking technology into the patient portal that disclosed plan member communications with Delta Dental to a third-party marketing and analytics company named Google, Inc. The disclosures contained plan member's protected health information. The Complaint alleges that these disclosures violated HIPAA, federal regulations and guidance published thereunder, and federal and state anti-eavesdropping laws. Federal courts around the country have sustained the claims at issue on materially similar facts, including in five recent decisions by judges in this District. *See A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. 2024) (Kendall, C.J.); *Kurowski v. Rush System for Health*, 2023 WL 8544084 (N.D. Ill. 2023) ("*Rush III*") (Kennelly, J.); *Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 WL 963779 (N.D. Ill. Mar. 31, 2025) (Perry, J.); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941 (N.D. Ill. 2024) (Daniel, J.); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) (Seeger, J.). The same result is merited here, and Wyssta's motion should be denied in its entirety.

## FACTUAL BACKGROUND

Delta Dental is a network of affiliated insurance providers that provide health insurance to their plan members. ECF 1, ¶¶ 1, 35. Wyssta operates Delta Dental's online healthcare portal—available at https://www.deltadentalcoversme.com—where Delta Dental plan members can,

among other things, communicate with Delta Dental and access plan benefits, including locating in-network dentists that fit their personal preferences. *Id.* ¶¶ 35-40. Unbeknownst to plan members, Wyssta deployed hidden tracking technologies on the portal provided by the third-party marketing and analytics company Google, Inc. ("Google") referred to in the Complaint as the Google Tracking Pixels. *Id*. ¶¶ 41-65. The Google Tracking Pixels intercepted plan member's communications with Delta Dental and disclosed those communications—which included personally identifiable information ("PII") and protected health information ("PHI") (PII and PHI, collectively, "Private Information")—to Google. *Id*. The Private Information Wyssta disclosed to Google included data identifying portal users as Delta Dental plan members and specific details about the dentists they were searching for. *Id*. These records were shared alongside unique identifiers that identified the specific plan member interacting with the portal. *Id*. Collectively, this information permitted Google to identify each specific portal user as a Delta Dental plan member and obtain their Private Information. *Id*. Wyssta and Google profited from Wyssta's disclosure of PII and PHI. *Id*. ¶¶ 136, 144. The complaint alleges that these disclosures violated HIPAA and regulations and guidance published thereunder, the federal Electronic Communications Privacy Act ("ECPA") (sometimes called the Wiretap Act), and the Illinois Eavesdropping Statute ("IES").

Plaintiff is a Delta Dental of Illinois plan member that used the patient portal to access plan benefits and find in-network dentists fitting his personal preferences. *Id*. ¶¶ 19, 184-190. Plaintiff's Private Information was disclosed to Google via the Google Tracking Pixels. *Id*. Plaintiff did not consent to these disclosures. *Id*. Moreover, Plaintiff cannot presently access his plan benefits on the Delta Dental portal without Wyssta unlawfully disclosing his PII and PHI to Google. *Id*.

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to evaluate the legal sufficiency of a complaint, not decide the merits of the case. *See, e.g.*, *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). For purposes of a motion to dismiss, the Court accepts "as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017) (quotation omitted). Courts must deny a motion to dismiss pursuant to Rule 12(b)(6) if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Id*., at 555-56.

## ARGUMENT

### A. Plaintiff States an ECPA Claim

Under the ECPA, any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" commits an offense and may be subject to a civil penalty. 18 U.S.C. §§ 2511(1), (4) & (5). This is also true for any person who intentionally discloses or uses, or endeavors to disclose or use, the contents of an intercepted communication. *Id.* § 2511(1)(c), (d). Wyssta's sole argument for dismissal of this claim is that it was a party to the communications and the disclosures do not fall into the "crime-tort" exception. ECF 12-1 at 5-10.

True, as Wyssta argues, Section 2511(2)(d) provides an exception to liability when the person intercepting or causing an interception of a communication "is a party to the communication or where one of the parties to the communication has given prior consent to such interception." *Id.* § 2511(2)(d). But, as Wyssta acknowledges, this "party exception" does not

permit a party that intercepts or causes interception to escape liability if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." *Id.* The crime-tort exception applies here.

HIPAA imposes a criminal penalty for knowingly "disclosing individually identifiable health information to another person." *See* 42 U.S.C. § 1320d-6(a)(3). And Plaintiff pleads that the disclosures at issue violated HIPAA. *See* ECF 1, ¶¶ 66-132. That is enough to satisfy the crime-tort exception at the pleading stage. *E.g.*, *Stein*, 2025 WL 580556, at *5 ("Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA.") (collecting cases).

**1. Wyssta's Argument That Its Primary Motive Was Financial Is Without Merit**

Wyssta argues that "Plaintiff must plausibly allege that Wyssta's 'primary motivation' in deploying the technology was to commit a crime or tort." ECF 12-1 at 6. In Wyssta's view, Plaintiff does not make that showing because the Complaint alleges that Wyssta's primary motivation was marketing and, ultimately, increasing revenue. *Id.* As Judge Seeger recently explained, that argument is "difficult to square with the statutory text" because "[t]he language of the statute gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations." *Stein*, 2025 WL 580556, at *5.

The crime-tort exception requires that the defendant knowingly do the *act* (here, disclosing Plaintiff's PHI to Google), not that the defendant specifically intend the act to be criminal or tortious. *Stein* makes that clear. *Stein* 2025 WL 580556, at *5 ("A party does not have to say, in effect, 'I want to commit a crime,' or 'today is a great day to commit a tort,'" rather "[t]he purpose must be to commit an act, and that act must be criminal or tortious," and thus "[i]f the purpose is

to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies."). For that reason, judges in this District have repeatedly rejected the argument, advanced by Wyssta here, that the crime-tort exception does not apply when a defendant's primary motivation for doing the act at issue was financial. *Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 ("Aspen claims that its only purpose was to improve its marketing and boost its revenues, but this purpose cannot be detached from the reality that Aspen achieved this improved marketing and revenue boost by disclosing Plaintiffs [PHI]," and the crime-tort exception applied where "Aspen placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA]."); *Rush III*, 2023 WL 8544084, at *3 (crime-tort exception applied where "Kurowski alleges that Rush knowingly transmits this data and that it does so for the purpose of financial gain."); *Mayer*, 2025 WL 963779, at *3 (crime-tort exception applied where "Plaintiffs have plausibly alleged that Duly intended to send their individually identifying health information to third-party Meta, in violation of HIPAA," and "[t]hat Duly may have intended to make money from sharing this information—either through benefits from Meta or increased business for Duly due to better-targeted advertisements—is immaterial (at least at this stage of proceedings)"); *Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 ("[P]laintiffs allege that LUMC's collection and disclosure of their personal health information was done knowingly and for purposes of financial gain – namely, to bolster profits via targeted marketing campaigns.... Taken as a whole, these allegations are sufficient to invoke HIPAA for purposes of the ECPA's crime-tort exception."); Other courts are in accord. *E.g.*, *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024) ("The Court also concludes that the crime-tort exception applies even when a defendant intercepts data for the purpose of financial gain.").

Ignoring this authority, Wyssta relies almost entirely on out-of-Circuit cases. ECF 12-1 at 6-8 (citing *e.g.*, *In re DoubleClick Inc. Privacy Litig.*, 154 F.Supp.2d 497, 515-19 (S.D.N.Y. 2001)). Most of Wyssta's cases were distinguished or expressly not followed in the in-District cases cited above. *E.g.*, *Mayer*, at 2025 WL 963779, at *3 (overviewing most of Wyssta's out-of-Circuit authority and finding it "unpersua[sive]"). The reason these cases miss the mark is that, unlike here, they largely involve the failure to allege that the interception at issue was an independent crime or tort—that is, that the interception violated some other statute besides the ECPA. *Cf. Stein*, 2025 WL 580556, at *4 ("There is no double dipping – the conduct must violate something else for the crime-tort exception to apply."). But that is not the case here, as Plaintiff alleges that the interceptions violated *both* the ECPA *and* HIPAA.

Wyssta's only in-Circuit authority is the Seventh Circuit's decision in *Thomas*. ECF 12-1 at 7 (citing *Thomas v. Pearl,* 998 F.2d 447, 451 (7th Cir.1993)). But *Thomas* does not address the distinction at issue—that is, whether the defendant must intend to do the *act* that is criminal or tortious or instead intend to *break the law*. Rather, like much of Wyssta's out-of-Circuit authority, the issue in *Thomas* was that the plaintiff had not shown that the interception was a violation of a law *other than the ECPA*. *Thomas*, 998 F.2d at 451 (crime-tort exception did not apply because "Thomas does not allege that Pearl has broken any laws other than the wiretapping law itself").

Putting all of the above aside, other cases demonstrate the "primary motivation" test Wyssta invokes, to the extent it has been applied in other districts, is readily satisfied when the interception violates another privacy law, as is the case here with HIPAA. For example, in *Brown v. Google LLC*, the court held that "the association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies this exception" because it violated privacy laws.

525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). Those are the facts here, and thus, even if a "primary motivation" test applies, it is satisfied.

Wyssta argues, in a footnote, that it is "absurd" to suggest that a health insurance company could have civil liability for using website tracking technologies. ECF 12-1 at 8 n.3. Plaintiff does not see the absurdity, and numerous judges in this District apparently also did not see it. Healthcare companies are subject to federal regulations prohibiting the disclosure of PHI for non-treatment purposes. Thus, they cannot install technology on their patient portals that disclose patient's PHI to third party marketing companies. It does not matter that other businesses or public entities use the same technology on their website.

**2. The Crime or Tort Is Independent of the Interception**

Wyssta contends that Plaintiff failed to allege that the crime or tort is independent from the interception. ECF 12-1 at 9-10. By this Wyssta appears to mean that, in order for the crime-tort exception to apply, the defendant must intercept the information at one time and then *later* use it to commit a crime or tort. But if that were the law, then all of the in-District cases cited above—*Kurowski, Aspen Dental, Mayer*, *Loyola Univ. Med. Ctr.*, and *Stein*—would have come out the other way, as they all involved a crime or tort that was committed at the time the interception occurred.

In that regard, Wyssta's "independent" crime or tort argument appears to be conflating two issues. The crime or tort must be "independent" in the sense that it is something other than the underlying ECPA violation. *Stein*, 2025 WL 580556, at *4 ("There is no double dipping – the conduct must violate something else for the crime-tort exception to apply."). But that does not mean that the crime or tort must happen at a later point in time. Rather, "[a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA." *Stein*, 2025 WL

580556, at *4. Thus, where the same disclosure violates both the ECPA and HIPAA "the crime-tort exception applies." *Id.*; *see also Aspen Dental*, 2024 WL 4119153, at *3 ("Accepting Plaintiffs' allegations as true, as the Court must at this stage, Aspen placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA] .... Plaintiffs plausibly allege that [Defendant] intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception."); *Rush III*, 2023 WL 8544084, at *3 (holding that allegations of sharing medical information via online tracking technologies were "sufficient to invoke the HIPAA exception-to-the-party-exception" of the ECPA). As Judge Seeger noted in *Stein*, "[c]ourts from coast to coast" have made the same finding. *Stein*, 2025 WL 580556, at * 5 (collecting cases); *see also Kane v. University of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. 2024) (crime-tort exception applied where plaintiffs alleged "Defendant configured the [online tracking technology] to collect and disclose, among other things, that a specific user booked an appointment with a specific healthcare provider and the search terms that the user entered to find that provider."); ... They have further alleged that Defendant disclosed this information to enhance its marketing efforts."); *Pedro Lugo v. Inova Health Care Services*, 2025 WL 905191, at *6 (E.D. Va. Mar. 25, 2025) ("Courts around the country, however, have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA and other state health privacy law") (collecting cases).

Wyssta's brief has nothing to say about this overwhelming weight of authority. True, a handful of out-of-Circuit district courts have adopted the minority view that Wyssta advances in its brief. ECF 12-1 at 9 (citing, *e.g.*, *Willams v. TMC Health,* 2024 WL 4364150, at *10 (D. Ariz. Sept. 30, 2024); *Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024);

*Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *27 (N.D. Cal. Apr. 11, 2024); *Nienaber v. Overlake Hosp. Med. Ctr.* (*Nienaber I),* 733 F. Supp. 3d 1072, 1095-1096 (W.D. Wash. 2024)). Many of these cases represent a minority view even in their own districts. *Compare Williams*, 2024 WL 4364150, at *10 *with Strong v. LifeStance Health Grp. Inc.,* 2025 WL 317552, at *4 (D. Ariz. Jan. 28, 2025); *compare Okash*, 2024 WL 1285779, at *4 *with Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *4-5 (D. Minn. Mar. 28, 2024). But whatever split may be occurring in other districts around the country, courts in this District unanimously adhere to the majority view that a HIPAA violation is an independent crime or tort separate from the underlying ECPA violation.[1]

**B. Plaintiff States an Illinois Eavesdropping Claim**

Plaintiff contends that Wyssta violated three subsections of the Illinois Eavesdropping Statute—720 ILCS 5/14-2(a)(3), (a)(4), and (a)(5)—as Google's principal. Liability may not be imposed on a party to the communication for acquiring its own communications—but may be based on a party to the communication's actions as a "principal" for a third-party interceptor. With

[1] In a footnote, Wyssta argues that the rule of lenity applies to resolve ambiguities in Wyssta's favor and attaches a 19-page *amicus* brief authored by the Chamber of Commerce from another case in another circuit, where the court has not ruled on the underlying motion. ECF 12-1 at 5 n.2. The Court should ignore that brief. Local Rule 7.1 limits motions to 15 pages without prior approval and provides that a longer brief is "subject to being stricken by the court." The attached brief is an attempt to file an oversized brief without court approval that is grossly unfair to Plaintiff who cannot respond to an additional 19-page brief within the page limits in the Local Rule. *Cf. M-1 Holdings, Inc. v. Members 1st Fed. Credit Union*, 2025 WL 844022, at *3 (N.D. Ill. Mar. 18, 2025) ("That gambit has been repeatedly denounced by court after court."). In any event, Wyssta has not made the appropriate showing for the application of the rule of lenity because Wyssta has not identified any "grievous ambiguity or uncertainty in the statute," *Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013) (declining to apply rule to Wiretap Act), even if Wyssta believes its application to these facts is an expansive reading of the ECPA (and, as *Kurowski, Aspen Dental, Mayer*, *Loyola Univ. Med. Ctr.*, and *Stein* make clear, it is not). Indeed, "[t]he mere possibility of articulating a narrower construction ... does not by itself make the rule of lenity applicable." *United States v. Pace*, 48 F.4th 741, 755 (7th Cir. 2022).

respect to this claim, Plaintiff's theory is that Google eavesdropped on the communications at issue, and Wyssta acted as Google's principal facilitating that eavesdropping. 720 ILCS § 5/14-1(b); ECF 1, ¶¶ 250, 254.

**1. Google Is Not a Party to the Communications**

As an initial matter, Wyssta contends that Google is a party to the communications because the data transmissions are sent to Google and Wyssta "simultaneously and contemporaneously," ECF 12-1 at 12 (emphasis removed), albeit separately, ECF 1, ¶ 31. Wyssta is wrong.

The IES does not define party. But caselaw has interpreted it to mean "one who takes part in the conversation." *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *11, *14 (N.D. Ill. Oct. 1, 2024) (recognizing the IES, ECPA and a California eavesdropping statute "overlap significantly"). The question is "who the intended recipient of the communication was." *Id.*, at *11. Like *TikTok*, the "'communications' in question" are the patient portal users' "interactions while browsing [the] website[]," and "[u]nder this characterization, the user is the sending 'party,' and the website is the receiving 'party.'" *Id.* at *12. Plaintiff did not know that Wyssta installed the Google Tracking Pixels on the patient portal or that Google was eavesdropping on her conversations with her health insurance provider. No reasonable person could view Google as the intended recipient of Plaintiff's communications.

Wyssta's cases, *Zak v. Bose* and *Google Cookie*, do not require a different result. ECF 12-1 at 11-12 (citing *Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) and *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). Each case "involved technical contexts in which the defendant was inextricably involved in the 'communication' in question," unlike here. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *12 (explaining each case). In *Google Cookie*, the data transmissions were sent

"directly to the defendant advertisers' servers." *Id*. Plaintiff does not make that allegation here; instead, Plaintiff alleges the communication is sent to Google without first passing through Wyssta's servers. ECF 1, ¶ 31 (communication from the "user's browser . . . to the third-party technology provider"). Moreover, how the technology operates will be a focus of discovery. *Rush III*, 2023 WL 8544084, at *3 (observing that plaintiff "lacks the direct access to what occurs in the background on Rush's web properties"). In *Zak*, the court also evaluated a materially different factual context than here. There, the plaintiff alleged that Bose, a wireless headphone maker, was liable for intercepting communications between the Bose application that headphone users used to connect to third-party music streaming services, like Spotify, and the third-party music streaming services. Bose argued that it was a party to the communications between the Bose application and the music streaming services. The Court agreed. 2020 WL 2762552, at *3. Here, Wyssta is arguing that *Google* is party to the communication (which would be analogous to Spotify in *Zak*), not itself (which would be analogous to Bose). Of course, a user of *Bose* headphones using the *Bose* application to connect to a streaming service would view *Bose* as a party to the communication, which is very much unlike here where users have ***no idea*** Google is involved in intercepting their PHI while communicating with Delta Dental (let alone its patient portal operator, Wyssta).

**2. Wyssta Is Google's Principal**

The IES creates a civil cause of action against an eavesdropper and "his principal" for the interception, recording, or transcription, "in a surreptitious manner, [of] any private electronic communication" by a non-party without "the consent of all parties to the private electronic communication." 720 Ill. Stat. §§ 5/14-2(a)(3); 5/14-6. Under the IES, a "principal" is "any person who: (1) knowingly employs another who illegally uses an eavesdropping device in the course of such employment; or (2) knowingly derives any benefit or information from the illegal use of an

eavesdropping device by another; or (3) directs another to use an eavesdropping device illegally on his or her behalf." 18 Ill. Stat. § 5/14-1(c). Plaintiff is pursuing a prong two principal liability theory only. On that theory, Wyssta "can plausibly be considered the principal that earned a profit ("derive[d] a benefit") from the use of cookies ("eavesdropping device") on [Wyssta's] web properties by . . . Google . . . ("by another")." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 853 (N.D. Ill. 2023).

Wyssta's arguments against principal liability miss the mark. *First,* Wyssta contends that Wyssta never "directed" Google to use an eavesdropping device on Wyssta's behalf, parroting the language of a prong three principal theory. ECF 12-1 at 13. Plaintiff is not pursuing a prong three theory. *Second,* Wyssta contends that Plaintiff's argument is somehow "circular" because "Plaintiff alleges the violation resulted in Wyssta knowingly deriving benefits and information in the form of marketing," but "Wyssta did not need to direct Google to do anything to receive the alleged benefits and information" because "Wyssta was a party to the communications at issue." ECF 12-1 at 13 (emphasis removed). This argument is difficult to follow. Whatever it may mean, Wyssta is conflating prongs two and three of principal liability. Prong two does not require that Wyssta direct Google to do anything.

### 3. Plaintiff States a 720 Ill. Stat. §§ 5/14-2(a)(4) Violation

Wyssta contends that the Google Tracking Pixels at issue are not an "eavesdropping device." An "eavesdropping device" is "any device capable of being used to . . . intercept . . . electronic communications[.]" 720 ILCS § 5/14-1(a). The statute itself does not define "intercept," but the term is defined under the federal equivalent as the "acquisition of the contents of any . . .

electronic . . . communication." 18 U.S.C. § 2510(4). The Google Tracking Pixels are capable of acquiring the contents of electronic communications. ECF 1, ¶¶ 35-65.

Wyssta cites *Stein*, which, on this narrow point, is inapposite. ECF 12-1 at 14 (citing *Stein*, 2025 WL 580556, at *8). There, the plaintiffs did "not allege that [the defendant health group's website] used an 'eavesdropping device.'" Here, Plaintiff makes that allegation, ECF 1, ¶ 248, and explains how the Google Tracking Pixels are capable of acquiring the contents of electronic communications, *id.* ¶¶ 35-65. Moreover, *Stein* held that the health group itself "did not manufacture, assemble, distribute, or possess any eavesdropping device or comparable device, either." *Stein*, 2025 WL 580556, at *8 (citing 720 ILCS 5/14-2(a)(4)). That is not an element of principal liability, and is instead an element of direct liability. Here, Plaintiff alleges that *Google* manufactures, assembles, distributes, and possesses an eavesdropping device or comparable device—the Google Tracking Pixels as described throughout the Complaint. And, in any event, Wyssta "possesses" the Google Tracking Pixels, since it acquired them and installed them on the website. ECF 1, ¶¶ 6, 16, 29, 41, 44.[2]

**CONCLUSION**

For the foregoing reasons, Wyssta's Motion should be denied in its entirety. Should the Court find either of Plaintiff's claims is subject to dismissal, Plaintiff requests leave to amend to cure any deficiencies. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020).

Dated: April 21, 2025

**DWOSKIN WASDIN LLP**

s/ *Eric S. Dwoskin*
Eric S. Dwoskin
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Tel.: 561-849-8060

[2] Wyssta reiterates that Google is a party to the communication between Wyssta and Plaintiff. That is wrong for the reasons explained above.

edwoskin@dwowas.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 21, 2025, I electronically served the foregoing document on the following counsel:

Jad Sheikali
SHOOK, HARDY & BACON LLP
111 South Wacker Drive
Chicago, IL 60606
Tel: (312) 704-7700
jsheikali@shb.com

*Attorneys for Defendant*

By: *<u>/s/ Eric S. Dwoskin</u>*
Eric S. Dwoskin